UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

RODOLFO GONZALEZ,               )
                                )
            Plaintiff,          )
                                )
      vs.                       )        1:05-cv-0607-JDT-TAB
                                )
J.D. BYRIDER,                   )
                                )
            Defendant.          )

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 21)[1]**

        Rodolfo Gonzalez was born in Cuba and moved to the United States in 1995.  He

began working for J.D. Byrider as an automobile service technician in September of

1997.  J.D. Byrider is a used car sales and finance franchise with a number of retail

locations throughout Indiana and other states.  Gonzalez began working for J.D. Byrider

at its location on Pendleton Pike in Indianapolis.  He transferred to the 38th Street

facility in June of 1999 and then back to the Pendleton Pike location in August of 2001.

        Michael Lazaropolis was also a service technician at the Pendleton Pike store.

He disliked Gonzalez and would express that dislike verbally, by arguing with Gonzalez

and sometimes by engaging in unacceptable name calling, using terms such as "bitch"

or "full of shit Hispanic."  He also complained to Gonzalez that Hispanics took work from

him and that "all Hispanics are bitches."  Gonzalez is a native Spanish speaker who

---

        [1]  This Entry is a matter of public record and will be made available on the court's web
site.  However, the discussion contained herein is not sufficiently novel to justify commercial
publication.

spoke English while at work and claims to understand eighty to ninety per cent of English conversations at work.  Gonzalez complained of Lazaropolis to the service manager, Darrel Dye, and managing partner John New, who would always respond by saying that they would talk to Lazaropolis about his inability to get along with Gonzalez and his language.  Lazaropolis received poor marks in his 2002 and 2003 employee review for his inability to get along with co-workers and improvement in handling his emotions and dealing with others was made a part of his development plan; however, there was no mention or warning in the reviews of his use of racially biased language.

On Monday, July 8, 2002, Gonzalez and Lazaropolis became involved in a heated argument that drew the attention of management.  According to the disciplinary warnings that were written and issued to the two men, both of the employees were using profanity and Gonzalez "got up into Michael's face."  The write-ups also indicate that Gonzalez had previously been warned about constantly getting into arguments with Lazaropolis.  After meeting with Gonzalez and Lazaropolis individually to obtain their version of the altercation, New, Dye and Doug Turner, the Director of Service Operations, met privately to discuss possible resolutions to what had become an unacceptable working relationship between the two service technicians.  Later, Turner spoke on the telephone with the regional manager and another member of the store management team to gain input regarding potential responses to the confrontation and solutions to the ongoing problem.  A decision was made to attempt to keep both of the service technicians employed, but at separate facilities.

Gonzalez then met with New, Dye and Turner.  He says he was told that one of the two service technicians would have to transfer to another facility or Gonzalez and Lazaropolis would both be fired.  Turner claims that Gonzalez was told that he would be transferred back to the 38th Street store and that the decision to transfer Gonzalez was agreed upon by the various managers after all of the discussions were held to weigh the options.  According to Turner, the reason they chose Gonzalez was because he was familiar with the 38th Street facility and had the type of skills that could fill a void that existed there.

The managers later provided Gonzalez with a disciplinary write-up, prepared on July 10, 2002, but he refused to sign it.  His disciplinary write-up states that Gonzalez, not Lazaropolis, would have to transfer back to the 38th Street facility.  Gonzalez concedes that at this point he knew that it was him and not Lazaropolis that was being transferred.  He refused to sign the written warning and walked out of the meeting.  He says he refused to sign the document because he had been with the company longer then Lazaropolis and would not agree to the transfer that was mentioned in the written warning.  Like past transfers, the one proposed after this incident would not effect Gonzalez's wages, hours or benefits.  It was simply a location change.  Gonzalez says that at that point he did not believe that J.D. Byrider would force him to transfer.

On Friday, July 12, 2002, Gonzalez was asked by John New if he had made up his mind about accepting the transfer.  When Gonzalez said he had not, New told him that if he did not accept the transfer by the end of the day he would be "out on the street."  Gonzalez then told New that he believed he was chosen for the transfer instead

of Lazaropolis because he was Hispanic and that he would not transfer because it

amounted to discrimination.  He said New did not like his accent or the fact that he was

Hispanic.  He accused New of never greeting him as he did other employees and

suggested that the lack of a greeting was because Gonzalez was Hispanic.  New then

told Gonzalez that he was fired and that he should go change his clothes and leave

immediately.

Gonzalez filed a charge of discrimination against J.D. Byrider with the Indiana

Civil Rights Commission, the substance of which states:

I.    On July 12, 2002, Respondent discharged me from my position as
      a mechanic.  I had worked for Respondent for five years.
II.   The reason for my discharge: I had a dispute with another
      mechanic.
III.  I believe Respondent discriminated against me on the basis of my
      national origin, Hispanic, because:
      a.   The owner offered to transfer both of us to another location
           or we would both be fired.
      b.   Neither one of us wanted to be transferred.
      c.   The owner discharged me, but the other mechanic, who is
           white, was not discharged.

That charge of discrimination is now the foundation for this lawsuit against J.D. Byrider,

who has moved this court for an entry of summary judgment in its favor.

### *Summary Judgment & Evidentiary Standards*

Summary judgment is appropriate when the record shows "that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986).  A dispute about a material fact is "genuine" if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether a genuine issue of material fact exists, the court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See id.* at 255.

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A party moving for summary judgment on a claim on which the nonmovant party bears the burden of proof at trial may discharge its burden by showing, "that is, pointing out," an absence of evidence to support the nonmovant's case. *Id.* at 325.

A plaintiff may demonstrate intentional discrimination through either the direct method or indirect method. *Steinhauer v. DeGolier*, 359 F.3d 481, 483 (7th Cir. 2004) (citing *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003)). The direct method of proof permits a plaintiff to show, by way of direct or circumstantial evidence, that the adverse job action taken against him was motivated by an impermissible purpose, such as race or national origin in this case. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (citing *Cianci v. Pettibone Corp.*, 152 F.3d 723, 727 (7th Cir. 1998)). Direct evidence "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Rhodes*, 359 F.3d at 504 (internal quotations and citations omitted). Circumstantial evidence of discrimination "must point

directly to a discriminatory reason for the employer's action." *Rhodes*, 359 F.3d at 504 (citing *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003)).

A plaintiff who lacks direct evidence of discrimination must proceed under the indirect method, familiarly known as the *McDonnell Douglas* burden-shifting test. *Id.* "If the plaintiff establishes a prima facie case, the employer must articulate a legitimate, non-discriminatory reason for its employment action, and in response the plaintiff must prove that the employer's proffered non-discriminatory reason is a pretext for discrimination." *Rhodes*, 359 F.3d at 504 (citing *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002)).

### *Analysis*

With no direct evidence of discrimination in this case, in order to make his prima facie case, Gonzalez must first establish: 1) that he is Hispanic, 2) that he was meeting his employer's legitimate performance expectations, 3) that he suffered an adverse employment action, and 4) that he was treated differently than similarly situated employees who were not Hispanic. *Ballance v. City of Springfield,* 424 F.3d 614, 617 (7th Cir. 2005). For purposes of its summary judgment motion J.D. Byrider concedes all but the third element. It argues that a transfer is not an adverse employment action and that Gonzalez impliedly resigned when he refused to accept the transfer. Gonzalez contends that he was fired and that he has met his obligation to present evidence which would support each element of his prima facie case.

The court agrees with Gonzalez that he has supported a prima facie claim of discrimination.  Looking at the evidence in a light most favorable to Gonzalez, New told him he was fired.  Termination is the quintessential adverse employment action.  While there is no question that Gonzalez could have remained employed, had he chosen to accept the transfer, there is also no question that he did not voluntarily resign from his position.  His refusal to transfer is, in essence, the legitimate nondiscriminatory reason for his employer's action.  However, the issue must be examined in the context of whether or not J.D. Byrider's reason is a pretext for discrimination, not in the form of a query as to whether the transfer would have amounted to an adverse employment action.

J.D. Byrider contends that it felt that it made good business sense to send Gonzalez back to its 38th Street facility, because he was familiar with the location and the people, and had the type of technical skills most needed there.  When he would not go, his employment was ended.  In support of his claim that J.D. Byrider's explanation for its decision is a pretext for discrimination, Gonzalez points to three things.  First, he contends that nothing was ever done about Lazaropolis despite the fact that he complained on a number of occasions to store management about the way he was treated by his co-worker.  Second, Gonzalez notes that New fired him and told him to "get the fuck out of here" after being told by Gonzalez that he believed that the choice to have him transfer was discrimination.  Finally, the fact that he was chosen for the transfer and not the Caucasian, Lazaropolis, serves as further evidence of pretext according to Gonzalez.

The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, well-considered or fair.  *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 435 (7th Cir. 2005).  To show pretext, a plaintiff must supply evidence to support a conclusion that the articulated reason for the adverse employment action is a lie or completely lacking in factual basis.  *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000).  That has not been done here.

The undisputed evidence supports a finding that Gonzalez had been told no later than mid-week after the Monday confrontation that he would be fired if he did not take the transfer to 38th Street.  The fact that New, frustrated by Gonzalez's refusal to transfer, profanely advised him to leave on Friday, is not suggestive that his words were in response to an allegation of discrimination.  Rather, his being fired was exactly what Gonzalez had been told would happen if he did not accept the move to the 38th Street location.[2]  And, he had been so advised on more than one occasion that week.

Generally, transferring an employee with all salary, benefits and work responsibilities remaining the same, is not by itself sufficiently unfavorable to constitute an adverse employment action.  *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 702-03 (7th Cir. 2001).  Whether the proposed transfer would constitute an adverse employment action may not be important for purposes of the prima facie case analysis in the *McDonnell Douglas* paradigm, but it is relevant for purposes of deciding whether a

---

[2]  In addition, to the extent Plaintiff seeks an inference of "retaliation" as a result of his termination coming only after he complained of discrimination, no retaliation claim was raised in his agency charge or pled in his Complaint.

choice to move Gonzalez, rather than Lazaropolis, is suggestive of some ulterior motive.  Although Gonzalez may have had a substantive reason for finding the transfer unfavorable, he has expressed none and the law presumes none.  Gonzalez simply maintains his surprise, and a suspicion of discrimination as well, that despite being the more senior employee and one who had complained of Lazaropolis previously, he was chosen over Lazaropolis.

Though the law does not require that it be so, the decision made by J.D. Byrider management was facially consistent with good business sense.  The two employees clearly could not work together and Gonzalez had significant experience at the other facility, making it an easy transition for that store.  In the employee reviews and progress planning, J.D. Byrider had sought to address the problem Lazaropolis had getting along with other employees.  And, since Plaintiff claims that at the time of the altercation he was the only coworker that Lazaropolis constantly fought with, there would be good reason to believe that things would be more calm at Pendleton Pike as well if Gonzalez was sent back to the other store.  And, no other evidence of record suggests that J.D. Byrider's reason for terminating Gonzalez (because he would not accept the transfer) or its reason for choosing Gonzalez for the transfer (his experience at 38th Street and his skills) were lies.  Consequently, there is insufficient evidence to support a conclusion that J.D. Byrider fired Plaintiff for some reason other than the nondiscriminatory reason it has advanced, and the undisputed facts support the entry of summary judgment in favor of J.D. Byrider.

### *Conclusion*

For the reasons set forth in this entry, Defendant's Motion for Summary

Judgment (Document No. 21) is **GRANTED**.

ALL OF WHICH IS ENTERED this 3rd day of August 2006.

John Daniel Tinder, Judge
United States District Court

Copies to:

Steven T. Fulk
Fulk & Allain
stfulk@fulk-allain.com

Robert M. Kelso
Kightlinger & Gray
rkelso@k-glaw.com

Aubrey Graham Kuchar
Kightlinger & Gray
akuchar@k-glaw.com